**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| iManage LLC, | Civil Action No. 1:21-cv-4524 |
| Plaintiff, | Judge |
| v. | |
| Legal Technology Group dba eSentio Technologies, | |
| Defendant. | |

**COMPLAINT**

Plaintiff iManage LLC brings this action against Defendant Legal Technology Group dba eSentio Technologies and alleges as follows:

**INTRODUCTION TO THIS ACTION**

1.      Plaintiff iManage LLC ("iManage") is a software company headquartered in Chicago, Illinois that provides work product management systems to law firms, corporate legal departments, and other professional services firms.  Since 1995, Plaintiff has continuously marketed and sold these products under the trademark "IMANAGE."  Plaintiff first registered the trademark "iManage" in the United States in 2002 and has obtained additional registrations for IMANAGE, IMANAGE WORKSITE, and its M Logo.  *See* Exhibit 1.

2.      Defendant Legal Technology Group, Inc. dba eSentio Technologies ("eSentio" or "Defendant") is a provider of business and technology consulting and implementation services to large law firms.

3.      iManage and eSentio entered into the iManage Alliance Program Agreement:

-1-

iResell Partner, effective as of October 8, 2018, under which eSentio was given the right to market, sell, and distribute iManage's products and granted a license to use the iManage trademarks in connection with the sale of iManage's products ("Alliance Program Agreement"). In accordance with the termination terms of the Alliance Program Agreement, on May 10, 2021, iManage sent written notice to eSentio that it was terminating the Alliance Program Agreement.

4.     Despite termination of the Alliance Program Agreement, Defendant continues to use iManage's trademarks to create the impression of an ongoing relationship. Defendant's continued use of the trademark "IMANAGE" violates iManage's trademark rights and causes consumer confusion. eSentio's continued use of iManage's trademarks is also a breach of the terms of the Alliance Program Agreement.

5.     iManage has attempted to resolve this issue informally with Defendant, including by contacting Defendant and its legal counsel repeatedly by email and telephone. Defendant did not respond or comply with iManage's repeated requests to cease use of its trademarks. Consequently, iManage brings this action in this Court for redress and an injunction in order to stop any confusion in the marketplace.

**THE PARTIES**

6.     iManage LLC is a Delaware limited liability company with a principal place of business at 71 South Wacker Drive, 4th Floor, Chicago, IL 60606.

7.     Upon information and belief, Legal Technology Group, Inc. (dba eSentio Technologies) is a corporation organized under the laws of Delaware with a principal place of business at 700 12th Street, NW, Suite 700, Washington, DC 20005.

**JURISDICTION AND VENUE**

8.     This is a civil action alleging federal trademark infringement, false designation of

origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125, common law trademark infringement, and breach of contract under Illinois law.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a) and (b), because the claims address federal questions concerning the Lanham Act.  This Court has supplemental jurisdiction over iManage's state law claims because those claims are joined with substantially related claims under the Lanham Act.  This Court also has supplemental jurisdiction over iManage's state law claims pursuant to 28 U.S.C. § 1367(a), because all of iManage's claims arise out of a common nucleus of operative facts.

10.      This Court has personal jurisdiction over Defendant pursuant to the Illinois long-arm statute, 735 Ill. Comp. State. 5/2-209 et seq. and such an assertion is in accordance with the Due Process clause of the Fourteenth Amendment of the United States Constitution.  Defendant has conducted substantial business throughout the State of Illinois and attempted to derive financial benefits from residents of the State of Illinois.  For example, Defendant has posted job listing for a position located in Chicago and leads monthly Legal CIO Roundtables in Chicago. *See* Exhibit 2. Additionally, the Alliance Program Agreement provides that the parties consent and submit to the jurisdiction of federal or state court in Illinois.

11.      In addition, Defendant has consented through agreement to personal jurisdiction in federal courts in the State of Illinois.

12.      Venue in this Court exists under: (i) 28 U.S.C. §§ 1391because Defendant conducts business within this District and is subject to the Court's personal jurisdiction; and (ii) § 1391(b)(2), as a substantial part of the events giving rise to iManage's claims occurred within this District. Finally, because Defendant is subject to personal jurisdiction in this District, venue is proper in this District.

13.     Assignment of this action to the Eastern District is proper because a substantial part of the events giving rise to the claims alleged herein occurred in this Division.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### iManage's Business

14.     iManage is a leading provider of work product management systems. iManage's products enable users to easily save, access, and share work documents and emails throughout an organization.  This allows users to identify and eliminate inefficiencies in their workflow and optimize business decisions and collaboration.

15.     More than three thousand organizations worldwide utilize iManage's products and services.

16.     Since 1995, iManage has made continuous use of the trademark "IMANAGE" in connection with its services and products.  Highlighting the importance of the mark to iManage's business, "IMANAGE" appears prominently and repeatedly on iManage's website, throughout iManage's marketing materials, and even in the URL for iManage's website:



17.     iManage's products are regularly referred to in media and press by reference to the "IMANAGE" mark.

18.     iManage is the owner of incontestable U.S. Federal Trademark Registration No. 2566557 which covers the mark "iManage" in connection with "[c]omputer software for managing documents, audio, video, email, text, data, graphics and facsimiles for application within document management, knowledge management and business-to-business information applications via local, wide area and global networks" in Class 9.  A true and correct copy of the certificate of registration for Reg. No. 2566557 is attached hereto as Exhibit 3.  The iManage mark was registered on May 7, 2002, and it has been in continuous use since at least that time.

19.     iManage is the owner of incontestable U.S. Federal Trademark Registration No. 2640717 which covers the mark "iManage Worksite" in connection with "[c]omputer software for providing the transmission of messages and the management and sharing of data among computer users across the internet, intranets and extranets" in class 9. A true and correct copy of the certification of registration for Reg. No. 2640717 is attached hereto as Exhibit 3.  The iManage Worksite mark was registered on October 22, 2002, and it has been in continuous use since at least that time.

20.     iManage is the owner of U.S. Federal Trademark Registration No. 5022159 which covers the mark "iManage" in connection with:

> *Online non-downloadable software that allows users to collaborate by contributing, modifying and managing, saving and searching data in a central*

*repository on local and wide area networks; online non-downloadable software that provides content authoring and management functions through a web browser; online non-downloadable software which allows users to search and access analytics across software systems, databases and web sites; online non-downloadable software for long-term archiving and disposition of physical and electronic information; online non-downloadable software for providing the transmission of messages and the management and sharing of data among computer users across the internet, intranets and extranets; online non-downloadable software for managing documents, audio, video, email, text, data, graphics and facsimiles for application within document management, knowledge management and business-to-business information applications via local, wide area and global networks; online non-downloadable software that enables users to collaborate by contributing, managing and sharing data among and between themselves across the internet, intranet and extranets; online non-downloadable software that automatically distributes content to designated persons as part of an automated process of workflow management*

in class 42.  A true and correct copy of the certification of registration for Reg. No. 5022159

is attached hereto as Exhibit 3.  The iManage mark was registered on August 16, 2016, and

it has been in continuous use since at least that time.

21.      iManage is the owner of U.S. Federal Trademark Registration No. 5022566 which

covers the M Logo mark in connection with:

*Computer software that allows users to collaborate by contributing, modifying and managing, saving and searching data in a central repository on local and wide area networks; computer software that provides content authoring and management functions through a web browser; computer software for long-term archiving and disposition of physical and electronic information; computer software for providing the transmission of messages and the management and sharing of data among computer users across the internet, intranets and extranets; computer software for managing documents, audio, video, email, text, data, graphics and facsimiles for application within document management, knowledge management and business-to-business information applications via local, wide area and global networks; computer software that enables users to collaborate by contributing, managing and sharing data among and between themselves across the internet, intranet and extranets; computer software that automatically distributes content to designated persons as part of an automated process of workflow management*

in class 9 and

Online   non-downloadable   software   that   allows   users   to   collaborate   by

contributing, modifying and managing, saving and searching data in a central repository on local and wide area networks; online non-downloadable software that provides content authoring and management functions through a web browser; online non-downloadable software which allows users to search and access analytics across software systems, databases and web sites; online non-downloadable software for long-term archiving and disposition of physical and electronic information; online non-downloadable software for providing the transmission of messages and the management and sharing of data among computer users across the internet, intranets and extranets; online non-downloadable software for managing documents, audio, video, email, text, data, graphics and facsimiles for application within document management, knowledge management and business-to-business information applications via local, wide area and global networks; online non-downloadable software that enables users to collaborate by contributing, managing and sharing data among and between themselves across the internet, intranet and extranets; online non-downloadable software that automatically distributes content to designated persons as part of an automated process of workflow management

in class 42. A true and correct copy of the certificate of registration for Reg. No. 5022566 is attached hereto as Exhibit 3. The M Logo mark was registered on August 16, 2016, and it has been in continuous use since at least that time.

22. iManage owns common law rights to the IMANAGE, IMANAGE WORKSITE, and M Logo marks through the extensive and continuous use by iManage of the marks in Illinois and other states in the United States (these rights, together with the registered iManage marks discussed above, are referred to herein as the "IMANAGE Marks").

23. Based on the extensive use of the IMANAGE Marks in connection with iManage's business, the IMANAGE Marks have taken on secondary meaning among consumers as a mark unique to and associated with iManage and its software products. The IMANAGE Marks are inherently distinctive and well-known for iManage's goods and services and valuable consumer goodwill exists in the IMANAGE Marks.

**Defendant's Infringing Activities**

24.     iManage and Defendant entered into the Alliance Program Agreement, effective as of October 8, 2018.  The Alliance Program Agreement states that, upon termination, the licenses granted under the agreement shall immediately terminate, and Defendant's right to market or integrate products bearing the IMANAGE Marks will terminate.  Additionally, upon termination Defendant must immediately cease to represent itself as a partner of iManage and otherwise desist from all conduct or representations that might lead the public or trade to believe that Defendant is a partner of iManage.

25.     iManage sent a letter to Defendant on May 10, 2021 notifying Defendant that it was terminating the Alliance Program Agreement.  iManage sent another letter on June 10, 2021 demanding that Defendant comply with the "effect of termination" obligations in the Alliance Program Agreement.  On June 21, 2021, legal counsel for iManage sent a letter to Defendant demanding that Defendant comply with the "effect of termination" provisions in the Alliance Program Agreement.   Defendant has not responded to iManage's communications or complied with the termination requirements of the Alliance Program Agreement.

26.     Defendant continues to make repeated infringing use of the IMANAGE Marks on its website and in its promotional materials.  The full "iManage" mark and M logo appears on Defendant's website in reference to Defendant's partnership relationship with iManage, as shown on the following page:



27.    The IMANAGE Marks also appear alone in Defendant's promotional materials:



28.     Upon information and belief, Defendant markets its products and services in the same or similar channels of trade as iManage and to some of the same companies to whom iManage markets its software.  In fact, the Alliance Program Agreement was based on Defendant selling iManage's products and services to users of iManage's products and services.

29.     Defendant's marketing and use of the IMANAGE Marks for its services is likely to cause confusion as to association, sponsorship, ownership, or affiliation between Defendant and iManage and its IMANAGE Marks, thereby infringing iManage's rights in its IMANAGE Marks.

30.     More than two months after the Alliance Program Agreement terminated, Defendant has failed to comply with any of the termination obligations. Consequently, iManage brings this action in this Court for redress and an injunction in order to stop Defendant from willfully deceiving the consuming public that it is offering iManage services and products and is a partner of iManage.

## COUNT I

### FEDERAL TRADEMARK COUNTERFEITING
### (REGISTERED MARKS)
### 15 U.S.C. § 1114

31.     As the first ground for relief, iManage alleges violation of 15 U.S.C. § 1114. iManage repeats and realleges the allegations each and every allegation contained in paragraphs 1 through 30 above, as if set forth herein in full.

32.     iManage owns exclusive rights in the U.S. registration for the mark IMANAGE (Registration No. 2640717), and this registration covers computer software for transmission of messages and management and sharing of data.

33.     iManage owns exclusive rights in the U.S. registration for the mark IMANAGE (Registration No. 2640717), and this registration covers computer software for transmission of

messages and management and sharing of data.

34.     iManage owns exclusive rights in the U.S. registration for the mark IMANAGE (Registration No. 5022159), and this registration covers online non-downloadable computer software for transmission of messages, document management, and workflow management.

35.     iManage owns exclusive rights in the U.S. registration for the mark M Logo (Registration No. 5022566), and this registration covers computer software and online non-downloadable computer software for transmission of messages, document management, and workflow management.

36.     Defendant has knowledge of iManage's registered rights in the IMANAGE Marks.

37.     Without iManage's authorization or consent, Defendant uses spurious marks identical or substantially indistinguishable from the registered IMANAGE Marks.  Defendant offers technology and consulting implementation services in the fields of document management, information governance and project management to law firms ("Counterfeit Services").  As a result, Defendant has engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

38.     Defendant's use of marks identical or substantially indistinguishable from the registered IMANAGE Marks in connection with identical goods and services is likely to cause and is causing confusion, mistake and deception among consumers as to the origin of the Counterfeit Services and is likely to deceive the public into believing the Counterfeit Services being offered and advertised by Defendant originates from, is associated with, or is otherwise authorized by iManage, all to the damage and detriment of iManage's reputation and goodwill.

39.     Defendant's acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to iManage, for which iManage has no adequate remedy at law.

## COUNT II
### FEDERAL TRADEMARK INFRINGEMENT
### (REGISTERED MARKS)
### 15 U.S.C. § 1114

40.     iManage repeats and realleges each and every allegation contained in paragraphs 1 through 39 above, as if set forth herein in full.

41.     iManage's IMANAGE Marks are inherently distinctive and iManage has used and marketed its IMANAGE Marks to distinguish and identify its software products and services. iManage has acquired substantial goodwill through the use of its IMANAGE Marks and has obtained multiple federal registrations for its IMANAGE Marks.

42.     Defendant's continued use of the IMANAGE Marks is likely to cause confusion, mistake, or deception, and constitutes infringement of iManage's registered trademarks in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

43.     As a result of Defendant's acts of trademark infringement and unfair competition, Defendant has profited and benefited in the marketplace, at the expense of and causing injury to iManage.

44.     As a result of Defendant's continued use of the IMANAGE Marks, Defendant is able to obtain recognition and continue to build a reputation in the market, all to the detriment of iManage and to the benefit, and unjust enrichment and profit, of Defendant.

45.     As a result of Defendant's unlawful conduct, iManage has been and continues to be substantially and irreparably harmed.  If Defendant's infringement and unlawful acts are permitted to continue, iManage will sustain further damage and irreparable injury.  Through such unfair acts and use of iManage's trademarks, the value of iManage's IMANAGE Marks will be diminished or destroyed, for which damage iManage cannot be adequately compensated at law.

46.     Defendant has derived unlawful gains and profits from its infringement of

iManage's IMANAGE Marks, and Defendant thereby has caused loss and damage to iManage's goodwill, and the IMANAGE Marks. As a proximate result of Defendant's infringement, iManage has suffered and is likely to suffer injury to its business, goodwill, reputation, and profit, all to the damage of iManage, in an amount as yet unknown but to be proven at trial.

47. iManage's damages may be trebled pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) because, upon information and belief, Defendant's actions have been committed willfully, with intent and full knowledge of iManage's rights, among other things. In addition, iManage is entitled to recover Defendant's profits and reasonable royalties, as well as costs of this action and reasonable attorneys' fees.

## COUNT III
### FEDERAL UNFAIR COMPETITION
### 15 U.S.C. § 1125(A)

48. iManage repeats and realleges each and every allegation contained in Paragraphs 1 through 47 above, as if set forth herein in full.

49. Defendant's use of the IMANAGE Marks in connection with Defendant's goods and services and related promotional activities is likely to cause confusion, mistake, or deception as to affiliation, connection, or association with iManage, and is also likely to cause confusion as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by iManage, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50. In addition, Defendant's use of the IMANAGE Marks constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion (including reverse confusion), mistake, or deception as to affiliation, connection, or association with iManage, and is also likely to cause confusion (including reverse confusion) as to the origin, sponsorship, or approval of Defendant's goods,

services, or commercial activities by iManage, all in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1125(a).

51.     Defendant's use of the IMANAGE Marks has caused and will continue to cause irreparable harm for which iManage has no adequate remedy at law, in that, among other things, (i) the IMANAGE Marks is a unique and valuable property right which has no readily determinable market value; (ii) Defendant's activities constitute a substantial interference with iManage's goodwill and relationship with its customers, business partners, vendors, the general public, and the media; and (iii) Defendant's activities, and the harm resulting to iManage, is continuing. Accordingly, iManage is entitled to injunctive relief.

52.     As a result of Defendant's unlawful conduct, iManage has incurred damages in an amount to be proven at trial consisting of, among other things, lost revenues, profits, injury to business relationships, and for diminution in the value of and goodwill associated with iManage's IMANAGE Marks.  iManage's damages may be trebled pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) because, upon information and belief, Defendant's actions have been committed willfully, with intent and full knowledge of iManage's rights, among other things.  In addition, iManage is entitled to recover Defendant's profits and reasonable royalties, as well as costs of this action and reasonable attorneys' fees.

## COUNT IV
### COMMON LAW TRADEMARK INFRINGEMENT

53.     iManage repeats and realleges each and every allegation contained in Paragraphs 1 through 52 above, as if set forth herein in full.

54.     In addition to the rights violated under the Lanham Act, iManage has strong and well-developed common law rights in the IMANAGE Marks.

55.     Defendant's use of the IMANAGE Marks is in violation and derogation of

iManage's common law rights, and is likely to cause confusion (including reverse confusion), mistake and deception among customers and the public as to the source, origin, sponsorship or quality of iManage's goods and services and business, thereby

causing loss, damage and injury to iManage and the public. Defendant knew, or in the exercise of reasonable care should have known, that its conduct was likely to mislead the public, and those engaged in the sale, purchase or distribution of software and services in the field of business process mapping.

56. Upon information and belief, the foregoing conduct by Defendant has been knowing, deliberate, willful, and with the knowledge that it is likely to cause mistake or to deceive, and in disregard of iManage's rights.

57. Defendant's wrongful acts, as alleged above, have permitted or will permit it to make substantial sales and/or profits on the strength of iManage's marketing, advertising, sales and customer recognition of the IMANAGE Marks.

58. As a result of Defendant's unlawful conduct, iManage has been and continues to be substantially and irreparably harmed. If Defendant's unfair competition and acts are permitted to continue, further damage and irreparable injury will be sustained by iManage. Through such unfair acts and use of the IMANAGE Marks, the value of the IMANAGE Marks will be diminished or destroyed, for which damage iManage cannot be adequately compensated at law.

59. Defendant has derived unlawful gains and profits from its acts of infringement, as alleged above, and has caused loss and damage to iManage, iManage's goodwill, and the IMANAGE Marks. iManage has suffered and is likely to suffer injury to its business, goodwill, reputation, and profit, in an amount as yet unknown but to be proven at trial.

60. iManage has no adequate remedy at law for, and is being irreparably harmed by,

Defendant's continuing violation of it rights as set forth above, and such harm will continue unless Defendant is enjoined by this Court.

<u>**COUNT V**</u>
**BREACH OF CONTRACT UNDER ILLINOIS STATE COMMON LAW**

61.     iManage repeats and realleges each and every allegation contained in Paragraphs 1 through 60 above, as if set forth herein in full.

62.     iManage and Defendant, for valuable consideration, entered into a valid and enforceable contract on October 8, 2018.

63.     Pursuant to the Alliance Program Agreement, iManage, among other things, granted Defendant a license to use its trademarks and provided discounted products and services to Defendant.

64.     Defendant breached the terms of the Alliance Program Agreement by failing to cease use of the IMANAGE Marks within 30 days of receiving written notice of termination.

65.     As a result of Defendant's breach, iManage has suffered damages as a result of this breach.

**<u>ALLEGATION OF HARM COMMON TO ALL CLAIMS FOR RELIEF</u>**

66.     iManage repeats and realleges each and every allegation contained in Paragraphs 1 through 65 above, as if set forth herein in full.

67.     iManage has suffered, is suffering, and will continue to suffer irreparable harm and damage as a result of Defendant's wrongful conduct.  Defendant will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of the business and reputation of iManage.  iManage's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

## PRAYER FOR RELIEF

WHEREFORE, iManage respectfully prays that the Court:

1.      Enter judgment against Defendant, as indicated below:

(a)      that Defendant has willfully infringed the federally registered IMANAGE Marks under 15 U.S.C. § 1114 and Illinois state law;

(b)      that Defendant has committed and is committing acts of false designation of origin, false or misleading description of fact, or false or misleading representation in violation of iManage's rights under 15 U.S.C. § 1125(a) and California state law;

(c)      that Defendant has willfully and deliberately competed unfairly with iManage in violation of iManage's rights under 15 U.S.C. § 1125(a); and

(d)      that Defendant has breached its contract with iManage in violation of iManage's rights under Illinois state common law;

2.      Issue preliminary and permanent injunctive relief against Defendant, that Defendant, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendant, be enjoined and restrained from:

(a)      using, imitating, copying, or making any other infringing use of the IMANAGE Marks and any other mark now or hereafter confusingly similar or identical to the IMANAGE Marks in connection with business process and performance management software products and related services;

(b)      manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the IMANAGE Marks or

-17-

any mark confusingly similar thereto;

(c)     using any false designation of origin or false description or statement which can or is likely to lead the trade or public or individuals erroneously to believe that any good or service has been provided, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for iManage, when such is not true in fact;

(d)     using the names, logos, or other variations thereof of the IMANAGE Marks in any of Defendant's trade or corporate names;

(e)     using or operating any domain name or URL incorporating "IMANAGE," or any mark identical or confusingly similar to the IMANAGE Marks;

(f)     engaging in any other activity constituting an infringement of the IMANAGE Marks, or of iManage's rights in, or right to use or to exploit the Mark; and

(g)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

3.     Require Defendant to publish notice to all distributors, brokers, retailers, tradeshows, sellers, customers and other members of the trade who may have seen or heard of Defendant's use of the IMANAGE Marks, or purchased any of Defendant's products or services which were marketed under the IMANAGE Marks, which notice shall disclaim any connection with iManage and shall advise them of the Court's injunction order and of Defendant's discontinuance from all use of the IMANAGE Marks;

4.     Order Defendant to pay the costs of any corrective advertising required by iManage as a result of Defendant's unlawful activities alleged herein;

5.     Order Defendant to hold in trust, as constructive trustees for the benefit of iManage,

its profits obtained from its provision of Defendant's goods and services under the IMANAGE Marks;

6.      Order Defendant to provide iManage a full and complete accounting of all amounts due and owing to iManage as a result of Defendant's illegal activities;

7.      Order Defendant to pay iManage's damages and Defendant's profits pursuant to 15 U.S.C. § 1117(a) for Defendant's willful violation of the IMANAGE Marks;

8.      Order Defendant to pay to iManage both the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action; and

9.      Grant iManage such other and additional relief as is just and proper.


Respectfully submitted,

**IMANAGE LLC**


Dated:  August 24, 2021          By: /s/ *Gina L. Durham*
                                 Gina L. Durham – ARDC 6269684
                                 DLA PIPER LLP (US)
                                 555 Mission Street
                                 Suite 2400
                                 San Francisco, CA 94105-2933
                                 Telephone: 415-836-2506
                                 gina.durham@dlapiper.com

                                 Michael A. Geller - ARDC 6305999
                                 DLA PIPER LLP (US)
                                 444 West Lake Street, Suite 900
                                 Chicago, Illinois 60606-0089
                                 Telephone: 312.368.2152
                                 michael.geller@dlapiper.com

                                 Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

iManage LLC demands a trial by jury as to all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**IMANAGE LLC**

Dated: August 24, 2021                    By: /s/ *Gina L. Durham*

Gina L. Durham – ARDC 6269684
DLA PIPER LLP (US)
555 Mission Street
Suite 2400
San Francisco, CA 94105-2933
Telephone: 415-836-2506
gina.durham@dlapiper.com

Michael A. Geller - ARDC 6305999
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone: 312.368.2152
michael.geller@dlapiper.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| iManage LLC, | Civil Action No. 1:21-cv-4524 |
| Plaintiff, | Judge |
| v. | |
| Legal Technology Group dba eSentio Technologies, | |
| Defendant. | |

**LIST OF EXHIBITS SUPPORTING PLAINTIFF'S COMPLAINT
AGAINST DEFENDANT**

| EXHIBIT | DESCRIPTION |
|---|---|
| **1** | Copies of TSDR printouts for the IMANAGE, IMANAGE, IMANAGE WORKSITE, and M Logo registrations |
| **2** | True and correct printouts from the eSentio website (https://www.esentio.com/ and https://www.esentio.com/home-2/our-solutions/#StrategicPartnerships) |
| **3** | Copies of U.S. Certificates of Registration for the IMANAGE, IMANAGE, IMANAGE WORKSITE, and M Logo registrations |